### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAY CHODOCK and NANCY CHODOCK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:05 CV 750 |
| | ) | |
| AMERICAN ECONOMY INSURANCE, | ) | |
| d/b/a SAFECO INSURANCE CO., f/k/a | ) | |
| AMERICAN STATES INSURANCE CO., | ) | |
| a foreign insurer, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION and ORDER

Plaintiffs Jay and Nancy Chodock, husband and wife ("the Chodocks") brought this action against defendant American Economy Insurance ("AEI"), alleging that AEI has wrongfully refused to pay benefits to Jay Chodock under the underinsured motorist coverage ("UIM") provision of a commercial auto insurance policy. The Chodocks seek damages for breach of contract and in tort, including punitive damages, for "bad faith," that is, breach of the insurer's duty of good faith in dealing with its insured. The case is before the court for disposition of two summary judgment motions that AEI filed: one seeking partial summary judgment on the issue of bad faith and punitive damages, and one filed later seeking summary judgment on the issue of coverage, which, if granted, would be dispositive of the entire case.[1]

---

[1] As noted in a previous order, the memorandum in support of the motion for summary judgment on the issue of coverage (DE #25) is captioned, incorrectly, as being in support of a motion for partial summary judgment, while the motion itself is captioned as one for summary judgment. There are other inconsistencies in the

A summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In evaluating a motion for summary judgment, the court must draw all reasonable inferences from undisputed facts in favor of the nonmoving party and must view the disputed evidence in the light most favorable to the nonmoving party. *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 551 (7th Cir. 1999).

As a preliminary matter, it should be noted that the Chodocks filed this action in the Superior Court in and for the County of Maricopa, Arizona, the jurisdiction where Jay Chodock suffered injuries in an auto accident. Based on the parties' diverse citizenship, AEI removed the action to the United States District Court for the District of Arizona. That court then granted AEI's motion pursuant to 28 U.S.C. § 1404(a) to transfer the action to this court. The Arizona district court concluded that the interests of justice and the convenience of the parties weighed in favor of litigation here, based

---

nomenclature used for the various filings: in some cases the entry on the docket sheet (which, under the electronic filing system, the parties create) is different than what the document itself is titled. These inconsistencies make citation to the memoranda and other filings in this case by title confusing. For that reason, the court hereafter will generally cite documents by their numerical docket entry designation only, e.g., "DE # 58 at [page number]."

on its review of a number of pertinent factors. For example, the policy of insurance involved in this action was issued to Jay Chodock's employer, the Raitt Corporation, which has its primary business location in South Bend, Indiana; the policy was to insure risks primarily located in Indiana; and the Arizona district court assumed that Indiana substantive law would apply. Opinion and Order of November 7, 2005 (DE #4).

Because the case originated in Arizona and because jurisdiction is based on the parties' diverse citizenship,[2] Arizona law, including Arizona's choice-of-law rules, must be applied. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); *Jaurequi v. John Deere Co.*, 986 F. 2d 170, 172 (7th Cir. 1993); *Edwardsville Nat. Bank and Trust Co. v. Marion Laboratories, Inc.*, 808 F. 2d 648, 650 (7th Cir. 1987). The parties have agreed that the substantive issues in this case are, as the Arizona court assumed, governed by Indiana law, and this court agrees. *See Beckler v. State Farm Mut. Auto. Ins. Co.*, 195 Ariz. 282, 286, 987 P. 2d 768 (Ariz. Ct. App. 1999) (validity of and rights created by policy of insurance governed by law of the state which parties understood to be the

_____

[2] In its discussion of whether the present suit could have been filed originally in the Northern District of Indiana, a prerequisite to transfer under 28 U.S.C. § 1404(a), the district court in Arizona stated that diversity jurisdiction would have existed because AEI was headquartered in Indiana and Jay Chodock was a "resident" of Michigan at the time the suit was filed. Opinion and Order of November 7, 2005 (DE #4) at 4. Residence and citizenship are not synonyms, however, and in this circuit, allegations of residence are not sufficient to demonstrate that diversity exists. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007). In addition, the court did not mention plaintiff Nancy Chodock's citizenship, a necessary factor to determining whether complete diversity exists. Finally, AEI's notice of removal specified its citizenship at the time of removal, not at that time the Chodocks filed suit. For these reasons, this court directed the parties to specify their citizenship at the time the complaint was filed (DE # 64). They did so, and the court is satisfied that diversity jurisdiction exists.

principal location of insured risk, unless some other state has a more significant

relationship to the issue at stake).

    The court therefore proceeds to the substantive issues, addressing AEI's motion

for summary judgment on the issue of coverage first, as a decision in AEI's favor would

end the case. The facts discussed herein are either undisputed or, when in dispute,

resolved in favor of the Chodocks.

    The policy of insurance at issue in this case is Commercial Auto Policy No.

02CC7003862, for the period 5-16-97 to 5-16-98 (hereinafter, "the Policy"), which, as

stated above, was issued to the Raitt Corporation, the "named insured" under the

Policy. The parties have agreed that exhibit "A" to AEI's Motion to Supplement

Evidentiary Materials in Support of Motion for Summary Judgment on Issue of

Coverage (DE # 56-2) is a complete copy of the Policy.[3] *See* "Plaintiffs' Response to

Defendant's Motion to Supplement in Connection With Motion for Summary Judgment

on the Issue of Coverage and Position in Regard Thereto" (DE # 58) at 1 ("Chodock has

no objection to the court's consideration of the document attached to American

Economy's December 8, 2006 Motion."). At the relevant times, Jay Chodock was the

President of Raitt Corporation, and primarily responsible for obtaining Raitt

Corporation's insurance coverage.

---

[3] The exhibit which the Chodocks attached to their complaint and referred to as
the policy at issue is an incomplete copy.

4

The auto accident in which Jay Chodock was injured occurred while he was a passenger in a rented auto being driven by Nancy Chodock. The Chodocks had rented the auto while on a trip to Arizona that was for both pleasure and business purposes. At the time of the accident, the Chodocks were returning to their lodgings after Jay Chodock had played a round of golf with his son. The accident was determined to be the fault of another driver who crashed into the rear of the Chodocks' vehicle. That driver's insurance limits were exhausted and insufficient to pay Jay Chodock's medical bills. Thus, he sought benefits under the UIM provisions of the Policy, alleging in the complaint that the declarations section of the Policy shows UIM coverage in the amount of $500,000, for which a premium of $102.00 was paid.

AEI agrees that the declarations section of the policy indicates UIM coverage in the amount of $500,000, but argues that the UIM coverage does not apply to the auto accident in which Jay Chodock was injured. AEI's argument is quite simple. Starting with the Policy's declarations section, Item 2[4] of the declarations lists in a row each of

---

[4] Item 2 of the declarations is at page 2 of the Policy, but found at the physical fifth page of the exhibit comprising the Policy, due to amendments to the declarations resulting from autos being dropped from, and added to, the Policy The first page of the exhibit is an affidavit authenticating it as the Policy. The next 2 pages are an amended declarations section issued February 1, 1998 (after the date of the accident), to delete coverage of a Ford Taurus. The next two pages are the amended declarations provisions in effect on the date of the accident. It should be noted that these pages show that the UIM premium at that time was $136.00, not $102.00, as alleged in the complaint. The discrepancy appears to be because the complaint referred to the premium charged when the policy was initially issued, but on October 6, 1997, the declarations were revised when coverage on a 1995 Lincoln Continental was dropped, and a 1998 Lincoln added, resulting in an increased premium. The original and complete declarations provisions of the Policy are pages 1-4, physically located at pages 7-10 of the exhibit.

5

the coverages provided by the Policy (liability, collision, uninsured motorist, etc.). Each coverage row has four columns. The four columns indicate, as to each type of coverage, the dollar limit of the benefits provided, the deductible (if any), the "covered auto symbol" (more on this critical item shortly), and the total premium charged (the policy covered multiple autos). For some coverages there is more than one "covered auto symbol." For example, for liability coverage, the "covered auto symbol" column shows numerals 2, 8 and 9. For UIM coverage, the "covered auto symbol" column contains only numeral 2.

The "Business Auto Coverage" provisions of the Policy begin at what is physically page 23 of the exhibit comprising the policy.[5] Section I of the Business Auto Coverage provisions, entitled "Covered Autos," provides:

> ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."

The meaning of each numerical "covered auto symbol" is then explained. Numeral 2—the only symbol shown for UIM coverage in the declarations—means:

> OWNED AUTOS ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you

---

[5] The pages of the Policy are not numbered sequentially, because of amendments as explained in n. 4 *supra*, and because each section of the Policy starts anew with page 1. Therefore, for clarity the court will hereafter refer only to the physical page number of the exhibit. Fortunately, the court's electronic case filing system places this number, in blue, at the top of each electronic page image.

own). This includes those "autos" you acquire ownership of after the policy begins.

Completing the provisions necessary to AEI's argument, under the "Indiana Underinsured Motorists Coverage" provisions of the Policy, at page 14 section B "Who Is an Insured," subsection 3 provided that in addition to the named insured and his or her family members, coverage extended to:

> Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". [Punctuation as in original.] The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.[6]

Thus, AEI argues that it has properly denied UIM benefits because the Policy provided UIM coverage only for autos that Raitt Corporation owned, and at the time of the accident, Jay Chodock was an occupant of a non-owned rental auto which was not a temporary substitute for a covered auto. Jay Chodock therefore was injured in an auto that was not within the Policy's UIM coverage.

The Chodocks make three main arguments in opposition to AEI's recitation of and reliance on these policy provisions.[7] First, they point to Ind. Code § 27-7-5-2, which

---

[6] The Chodocks have not argued or suggested that the Arizona rental car was a temporary substitute for a covered auto.

[7] The Chodocks' complete argument is comprised of three separate documents. In reverse order based on date of filing, they are: 1) "Plaintiffs' Response to Defendant's Motion to Supplement in Connection With Motion for Summary Judgment on the Issue of Coverage and Position in Regard Thereto" (DE # 58); 2) "Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment on Issue of Coverage" (DE # 33); and 3) "Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment [on the bad faith issue]" (DE # 21).

provides, as pertinent here, that in automobile liability insurance policies issued in Indiana the insurer must "make available" uninsured ("UM") and UIM coverage "unless such coverages have been rejected in writing by the insured." This provision has been interpreted to mean that when the insurer does not obtain the insured's written rejection, the coverage is written into the policy as a matter of law. *See United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999).

It is undisputed that the Policy provided liability insurance to Jay Chodock when he was driving a rented auto, making him an "insured" under the policy for liability. It is undisputed that Jay Chodock did not reject UM/UIM coverage in writing. Therefore, the Chodocks argue that Ind. Code § 27-7-5-2 means that he also had UIM coverage while occupying a rented auto. DE # 58 at 2-3.

The problem with this argument, as AEI points out, is the existence of a related statute, Ind. Code § 27-7-5-5, which provides in pertinent part:

> When the coverage specified in this chapter [chapter 5, Uninsured Motorist Coverage and Underinsured Motorist Coverage] is written to apply to one (1) or more motor vehicles under a single automobile liability policy, *such coverage applies only to the operation of those motor vehicles for which a specific uninsured or underinsured motorist premium charge has been made and does not apply to the operation of any motor vehicles insured under the policy . . . for which a premium charge has not been made.*

Ind. Code § 27-7-5-5(b) (emphasis added). "This statutory provision expressly permits an exclusion from UIM coverage for the operation of a motor vehicle insured under the policy or owned by the named insured for which a premium charge has not been made." *Veness v. Midland Risk Ins. Co.*, 732 N.E.2d 209, 213 (Ind. Ct. App. 2000).

8

In the present case pages 12-13 of the Policy contain an endorsement entitled

"Drive Other Car Coverage – Broadened Coverage for Named Individuals" which

provides, subject to exceptions not applicable here:

> Any private passenger type "auto" you [Raitt Corporation] don't own,
> hire or borrow is a covered "auto" for LIABILITY COVERAGE while
> being used by any individual named in the Schedule or by his or her
> spouse while a resident in the same household.

Policy at 12-13 (Section B(1)). It is undisputed that Jay Chodock was an individual

named in the schedule on the endorsement, and that he was injured while an occupant

of a rental car not owned, hired or borrowed by Raitt Corporation that was being driven

by his spouse. Thus, the rental car was a "covered 'auto'" under the Policy for liability

purposes, and so was a "motor vehicle[ ] insured under the policy" as meant by Ind.

Code § 27-7-5-5(b). Although they attempt to do so—as is discussed immediately

below—the Chodocks have not identified any provision in the Policy charging a UIM

premium for rented autos covered under the policy for liability purposes, which means

that inclusion of UIM coverage on the auto rented by Jay Chodock is not mandated by

Ind. Code § 27-7-5-2, due to the exception found in Ind. Code § 27-7-5-5(b).

The Chodocks' attempt to identify a UIM premium for rented autos is essentially

their second argument: that the "Drive Other Car Coverage – Broadened Coverage for

Named Individuals" endorsement mentioned above itself extends UIM coverage to

rental cars being used by the Chodocks. DE # 33 at 2-3. This argument is flatly

contradicted by the terms of the endorsement, section A of which states: "This

endorsement changes only those coverages where a premium is shown in the

9

Schedule." Policy at 12. The referenced schedule appears immediately above Section A, and neither a premium, nor any person's name, is shown for UIM coverage (or, for that matter, UM coverage). Clearly, the endorsement does not extend UIM coverage to a rental car.

The Chodocks' only explanation for the endorsement's failure to support their position is that "at the very least, a question of fact is created as to whether the failure to include the names of the individuals in the box reflected for uninsured and underinsured motorist coverage was no more than a mere clerical error." DE # 33. There is no evidentiary support for this claim of clerical error—other than, in the broadest sense, the Chodocks' third argument, discussed below—and a party cannot defeat a motion for summary judgment by baldly alleging that there is a factual dispute. *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000). Instead, the party must supply evidence sufficient to create a factual dispute and that would allow a jury to return a verdict in his or her favor. *Id.*

The Chodocks' third argument is that Jay Chodock's reasonable expectations,[8] based on representations made by AEI's agent, Stuart Cohn, were that the Policy provided the same coverage for his use of a rental car as it did for his use of a Raitt-

---

[8] As previously stated, it is undisputed that Jay Chodock was Raitt Corporation's President and the person responsible for obtaining its insurance coverage at the relevant time.

10

owned vehicle, estopping AEI from denying coverage.[9] DE # 21 at 5, 8-9; DE # 33 at 4;

DE # 58 at 3-4. As evidentiary support, the Chodocks point to: 1) Jay Chodock's

deposition, in which he states that he asked Cohn whether he should take, or decline,

additional insurance on rental cars, and Cohn "specifically told" him that the Policy

covered "all leased vehicles," Chodock dep. at 145, DE # 21-2 ex. 6; 2) Cohn's

deposition, in which he states that he cannot remember whether he ever told Jay

Chodock that he would be fully-covered while in a rental car and so did not need to

purchase additional insurance,[10] Cohn dep. at 7-8, DE # 58-2 ex. A; and 3) the affidavit

of Robert Dunbar, a Raitt Corporation employee who in 1998 became responsible for

obtaining Raitt's insurance, and who says that Cohn told him that all coverages in the

Policy that applied to vehicles owned by Raitt Corporation would apply when he was

traveling in an auto rented for Raitt business purposes. DE # 58-2, ex. B.

 As to the last item, Dunbar's affidavit, his conversations with Cohn took place in

1998, after the accident in which Jay Chodock was injured. What Cohn may have said to

---

 [9] A sub-argument regarding Chodock's reasonable expectations is that insurers can only limit coverage if the limitation is clearly expressed, and AEI's use of a numerical "covered auto" symbol did not clearly express the limitation of coverage to owned autos only. DE # 58 at 4. No cases supporting the latter half of this assertion are cited. The court does not agree, particularly in the circumstances of a policy insuring corporate risks as contrasted with a policy issued to an ordinary consumer, that AEI's use of numerical symbols did not clearly express its intention.

 [10] Cohn also testified in his deposition that he "wouldn't have made a statement like that." Cohn dep. at 8, DE # 58-2 ex. A. Deciding what inferences to draw from such testimony is grist for the finder-of-fact. On summary judgment, Jay Chodock's testimony that Cohn did make such statements must be credited.

Dunbar has little, if any, probative value as to what Jay Chodock may have understood about the coverage provided by the Policy prior to the December 1997 accident. Nevertheless, Jay Chodock's deposition testimony that Cohn specifically made such representations to him is itself sufficient to create an issue of fact as to what Cohn may have said about the policy, whether or not Cohn remembers any such conversation or denies that it even took place.

AEI, however, has argued throughout the lengthy briefing of the issues in this case that what Cohn did or did not say to Chodock concerning the Policy cannot be considered, because under Indiana law extrinsic evidence cannot be admitted to interpret an insurance policy unless the policy is ambiguous. DE # 35 at 3; DE # 63 at 6; *see Commercial Union Ins. v. Moore*, 663 N.E.2d 179 (Ind. Ct. App. 1996). The Chodocks have not argued that the Policy is in any way ambiguous, so extrinsic evidence in the form of Cohn's statements is improper, AEI believes.

The court agrees that AEI's citation of *Moore* accurately encapsulates Indiana law on the issue of using extrinsic evidence to interpret a contract. The problem is, that is beside the point. The issue is not whether the Policy needs interpretation, but instead whether Cohn's alleged oral representations at odds with the policy supersede its terms. Indiana recognizes that there are circumstances in which an insurance agent's representations that a policy covers a particular risk can override the express terms of the policy.

> [W]hile the [trial] court's findings are not incorrect insofar as Village may
> have had a duty to acquaint itself with the policy, case law recognizes an

exception to this duty. In *Town & County Mut. Ins. Co. v. Savage* (1981), Ind. App., 421 N.E.2d 704, this court upheld the trial court's decision finding that the insured was not contributorily negligent for failing to read the insurance policy where the insurance company had led the insured to believe that the specific coverage he had requested had been provided. Specifically, this court stated,

> [w]e cannot say that the evidence as to whether [the insured] should have read the policy or whether [the insured] reasonably relied upon the representations made to him by [the insurance company's] employee ... was without conflict ... it was not contrary to Indiana law for the trial court to find that [the insured] was not contributorily negligent.

*Town & Country*, *supra*, at 708. Thus, reasonable reliance upon an agent's representations can override an insured's duty to read the policy.

Furthermore, the Seventh Circuit held that:

> It is true that courts in Indiana and elsewhere, realizing that many people do not read their insurance policies and, perhaps even more important, do not do so because the policies are unreadable, have held that the agent's oral representations at the time of sale can override the written terms of the policy. [Citations omitted.] If the agent insists to the prospective purchaser that the policy will insure against a hazard, ..., that the prospect is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively, dense and rebarbative policy language.

*Burns v. Rockford Life Ins. Co.* (7th Cir.1984), 740 F.2d 542, 544.

Consequently, given that Village claims it relied on the agent's representations, we cannot say the evidence leads only to the conclusion that Village was contributorily negligent for failing to read the policy. Rather, a question of fact exists as to whether Village reasonably relied on the representations made to it by the agent of the Insurance Company, who was fully aware of the reasons for which Village procured the policy.

*Village Furniture, Inc. v. Associated Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind. Ct. App. 1989).

Although AEI has not argued the point, it may be the case that for Cohn's alleged statements to have such an impact, the Chodocks have to show more than the simple fact that he made them, for example, that the insurance policy involved was somewhat complex.[11] *See Wiggam v. Associates Financial Services of Indiana, Inc.*, 677 N.E.2d 87, 90-91 (Ind. Ct. App. 1997); *cf. Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1297 (Ind. Ct. App. 1992) (in breach of fiduciary duty action against agent based on agent's advice regarding policy, special relationship of trust and confidence must be shown.) The Chodocks have the ultimate burden on any such issues, and there is not enough evidence in the record at this point to determine whether those issues could be decided in their favor.

This does not mean, however, that the Chodocks lose, and that the court should grant AEI's motion. It is AEI's burden, in moving for summary judgment, to show that it is entitled to a summary judgment; that is, that the undisputed facts and applicable law demonstrate that the case can only be decided in AEI's favor. Simply making the

---

[11] On this issue, it should be noted that while the court has already found that the policy clearly did not provide UIM coverage for a rental car under the circumstances, that does not mean that the policy is not complex. The "Drive Other Car" endorsement provides no UIM coverage because no UIM premium is shown on the schedule on the endorsement. But immediately below the schedule, the endorsement states: "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." This raises the question whether, despite the absence of a premium entry, the declarations could show that UIM coverage existed on a rental car. This is but one example of the Policy's complexity.

14

argument that Cohn's alleged statements cannot be considered as AEI did here, without any discussion of the facts or law concerning Indiana's recognition that an agent's oral representations can override policy terms, doesn't carry AEI's burden to show that it is entitled to summary judgment.

Similarly, another potential problem for the Chodocks is that there is a difference between insurance agents and insurance brokers. The former represent one insurer, while the latter represent many companies and typically act as the agent for the buyer, not the company, and their torts are not attributed to the insurance company. *See Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 356-57 (Ind. Ct. App. 1995). The record is also devoid of any evidence showing what Cohn's status was, but the only argument that AEI has provided on this issue, in its initial reply brief, is in a footnote to its argument that Cohn's statements shouldn't even be considered:

> Plaintiffs suggest that Mr. Cohn, the agent, was "American Economy's Agent." [citation omitted]. However, the designated evidence does not suggest that this was the case. Chodock testified that Cohn was Chodock's agent.[12] There is no evidence that has been designated to suggest that Mr. Cohn had any type of authority to bind American Economy even if this evidence were to be considered.

DE # 35 at 3 n. 5.

The issue whether an individual is a broker acting as an agent of the buyer, or is an agent representing the insurer, is "fact sensitive and requires a consideration of

---

[12] It appears that AEI is referring to the fact that in his deposition, Jay Chodock referred to Cohn as "my insurance agent." Chodock dep. at 145, DE # 21-2 ex. 6. Chodock's lay use of such a common way of referring to an insurance agent or broker is certainly not dispositive of the issue.

many factors." *Benante v. United Pacific Life Ins. Co.*, 659 N.E.2d 545, 547 (Ind. 1995).

More importantly, there are circumstances where a broker is essentially a dual agent,

acting as the agent of the insured for some aspects of a transaction, and of the insurer

for others. *Id.* at 547-48; *Malone v. Basey*, 770 N.E.2d 846, 851 (Ind. Ct. App. 2002);

*Plumlee*, 655 N.E.2d at 357. AEI's skeletal footnote argument is not enough to show that

it is entitled to judgment as a matter of law because Cohn did not have any authority to

bind it.

       To summarize in only a sentence what it has taken fifteen pages above to say,

AEI is not entitled to summary judgment, because there are questions of fact as to

whether Cohn was acting as its agent and whether Cohn specifically told Jay Chodock

that Chodock would be covered by the Policy's UIM insurance when he was driving a

rental car. This means that AEI's motion for partial summary judgment on the issue of

bad faith and punitive damages is not moot, and must now be addressed. Given the

conclusion that the written policy itself does not provide UIM coverage, and that any

such coverage depends entirely on what Cohn may have said, resolution of the motion

can be brief.

       In *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993), the Indiana Supreme

Court recognized an action for tortious breach of an insurer's duty to deal with its

insured in good faith. Although the "precise extent" of the duty was not defined, and

continues to evolve, the Court recognized that the duty:

       includes the obligation to refrain from (1) making an unfounded refusal to
       pay policy proceeds; (2) causing an unfounded delay in making payment;

(3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id.* The court specifically recognized that insurers are free to dispute coverage in good faith; thus, the mere fact that a claim is denied does not automatically supply the grounds for recovery, even if it is later determined that the insurer erred and coverage does exist. *Id.* at 520.  As a result, "[a] finding of bad faith 'requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.*, – F.3d –, 2007 WL 1598099 *4 (7th Cir. June 5, 2007) (*quoting Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 677 (Ind. Ct. App. 2007)). Punitive damages may only be recovered when, in addition to proving the tort, the plaintiff shows by "clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future.'" *Hickman*, 622 N.E.2d at 520 (*quoting Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137-38 (Ind. 1998)).

In its motion for partial summary judgment on the issues of bad faith and punitive damages, AEI argues that the undisputed evidence shows that it diligently responded to Jay Chodock's claim for coverage and that it has a good-faith basis to dispute the existence of UIM coverage, and therefore it can be held liable neither for bad faith nor, consequentially, punitive damages. The Chodocks' response, essentially, is

17

their argument, already considered and rejected above, that the Policy's terms clearly provide coverage.

They buttress this argument with an assertion made throughout their negotiations with AEI that AEI's position is "ludicrous," DE # 21 at 4, because a jury could "easily" find that AEI, which "received a premium for underinsured motorist coverage from a corporation obviously made up of individuals, but refused to provide coverage to a designated driver listed in an expanded coverage endorsement, is not only guilty of bad faith, but also liable for punitive damages." DE # 21 at 7-8. In addition, the Chodocks have requested pursuant to FED. R. CIV. P. 56(f) that any decision on AEI's motion be withheld until the Chodocks have the opportunity to conduct additional discovery designed to show that AEI's claims representatives had the type of evil state of mind required for a finding of malice and oppressiveness that would justify an award of punitive damages.

The Chodock's assertion that AEI's denial of coverage is "ludicrous" is based on a misunderstanding of AEI's position and of the Policy that is at the root of their belief that the Policy clearly provides coverage. Because AEI relies on the fact that the "named insured" in the Policy that determines the scope of UIM coverage is Raitt Corporation, the Chodocks have characterized as ludicrous AEI's "contention that it was only a corporation, not its individual members, who were entitled to uninsured motorist coverage [because that] obviously would mean there simply was no coverage." DE # 21 at 4. Thus, AEI's insistence that the "Drive Other Car" endorsement did not provide Jay

18

Chodock the UIM coverage the Chodocks see as otherwise absent from the policy,

appears to the Chodocks to mean that the UIM coverage is illusory, i.e., the Policy

contains no UIM coverage whatsoever despite the fact that AEI was charging a

premium for it.

What the Chodocks are missing is that the definition of "Who Is an Insured" in

the "Indiana Underinsured Motorists Coverage" provisions of the Policy provided that

in addition to the named insured, Raitt Corporation, coverage extended to:

> Anyone else "occupying" a covered "auto" or a temporary substitute for a
> covered "auto". [Punctuation as in original.] The covered "auto" must be
> out of service because of its breakdown, repair, servicing, loss or
> destruction.

Policy at 14 (Section B(3)). In other words, a multitude of individuals had UIM coverage

under the Policy: Jay Chodock, and any other person occupying an auto owned by Raitt

and scheduled for coverage in the Policy's declarations, or that otherwise qualified as a

"covered" auto (such as a car rented by Raitt as a temporary substitute for a vehicle

being repaired.) This means that the Policy's UIM coverage was not illusory, and so the

"Drive Other Car" endorsement does not have to be interpreted to provide "missing"

coverage.

As explained above in considering AEI's motion for summary judgment on the

issue of coverage, what this case comes down to is whether a jury believes Jay

Chodock's testimony that agent Cohn specifically told him that the Policy provided him

with UM/UIM coverage when he was driving a rental car, or finds Cohn's inability to

recall that any such conversation occurred coupled with his belief that he would not

19

have said that to be a more credible denial.[13] With coverage hinging on that factual

dispute, and the written terms of the Policy not providing UIM coverage under the

circumstances, no reasonable jury could find AEI liable for bad faith and punitive

damages.

As noted, the Chodocks requested, pursuant to FED. R. CIV. P. 56(f), that the court

delay resolving AEI's motion for partial summary judgment until they could conduct

additional discovery concerning AEI's "bases for denial of coverage, whether the denial

was predicated on reasonable grounds," and so on. Rule 56(f) affidavit, DE # 22. The

purpose of RULE 56(f) is to allow a party the opportunity to develop facts "essential" in

order to respond to a motion for summary judgment. FED. R. CIV. P. 56(f); *Davis v. G.N.*

*Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005).

In this case, no amount of discovery is going to change the fact that the written

terms of the policy give AEI a reasonable basis for denying coverage; that is, short of the

unlikely-nearing-impossible chance of finding someone at AEI involved in the decision

to deny the Chodocks' claim who would admit knowing that Cohn had told Jay

Chodock that the Policy provided UIM coverage on all rental cars Chodock might

drive.[14] As explained in *Davis*, the slim hope of finding such a "proverbial 'smoking

---

[13] This is the main issue, putting aside legal questions as to whether Cohn's
representations bound AEI.

[14] Even then, because of the legal issues concerning Cohn's authority, AEI's
denial of coverage wouldn't necessarily be a breach of the duty of good faith. This is
another reason for deciding the motion without awaiting additional discovery.

gun'" is not a reason to delay a summary judgment without allowing the additional discovery. *Id*. As a result, the court will **DENY** the Chodock's motion pursuant to Rule 56(f).[15]

       For the foregoing reasons: (1) AEI's motion for partial summary judgment on the issues of bad faith and punitive damages (DE # 19) is **GRANTED**; (2) the Chodocks' motion to continue pursuant to RULE 56(f) (DE # 22) is **DENIED**; and (3) AEI's motion for summary judgment on the issue of coverage (DE # 24) is **DENIED**. The stay of all proceedings (DE # 44) is **LIFTED**. The parties are **ORDERED** to confer, and to request a status conference before Judge Nuechterlein, to resolve the Chodocks' now-pending motion to compel (DE # 40), and to address any other issues including setting a schedule to complete discovery and for the trial of this case.

**SO ORDERED.**

      **Enter:** June 22, 2007

                s/James T. Moody
               JUDGE JAMES T. MOODY
               UNITED STATES DISTRICT COURT

---

[15] Nevertheless, there will be a period of additional discovery in this case, and the court's decision on the issue of bad faith remains interlocutory. This order should not be read as barring the Chodocks from attempting to discover whether Cohn ever informed AEI that he had told Jay Chodock the policy provided UIM coverage for rental cars, should they wish to pursue that remote possibility.